# Michael E. Kania, Ph.D.

*Clinical & Forensic Psychology*

The Barton House
20 Nevada Street, Suite 202
Redlands, CA 92373
(909) 748-0103   Fax (909) 798-2926

July 12, 2013

Mr. Ricardo A. Nicol
Attorney at Law
1633 E. Fourth Street, Ste. 102
Santa Ana, CA 92701

    RE:    Brandon William Schroth
              Docket No.: 09743;12CR00977-001-WQH

Dear Mr. Nicol:

    At your request, I have completed a confidential psychological evaluation of your client, Brandon William Schroth, for the purpose of providing you with information of a psychological nature necessary in your representation of him. You asked that I address the issue of Mr. Schroth's pedophilia, when he began acting on this pedophilia, and what may have caused this. You also asked that I evaluate for the presence of any post-traumatic stress disorder, as you reported some suggestion that he may have suffered from such a disorder following his service in Iraq. Finally, you asked that I offer an opinion as to whether Mr. Schroth could be successfully rehabilitated while incarcerated.

### Identifying Information

    Mr. Schroth is a forty-year-old (DOB 6-6-73) man who was charged with a total of fifteen charges including sexual exploitation of a child, aiding and abetting, and aggravated sexual abuse of a child. He pled guilty to twelve of these counts and is awaiting sentencing.

    Mr. Schroth was identified as the result of a search warrant executed at the home of a suspected child pornographer in Denver, Colorado. Videos and images found at that time depicted Mr. Schroth engaging in sexually explicit acts with at least four minor females. Further investigation revealed that this behavior dated back to at least 2010, when Mr. Schroth became a member of a group that shared child pornography. It was later learned that Mr. Schroth had communicated with members of this group via text messaging and that he had met with them in person between December 2010 and December 2010 for the purpose of engaging in sexual contact with these juveniles. There was some suggestion that he had visited a family in Germany, and while there had sexually abused two young girls (ages eight and nine). A number of videos were identified. The

Psychological Evaluation
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

Kania 2

behavior depicted on these videos included a victim orally copulating and masturbating Mr. Schroth, and another victim masturbating Mr. Schroth while he asked if he could "kiss your bobbies," and ejaculated on her chest. In another video, Mr. Schroth asked the victim to put his penis in her mouth because "it will make it feel good" and "make it go faster." He then directed her how to masturbate him and told her that she was "sexy." Another video showed Mr. Schroth opening the victim's robe to expose her breasts, then fondling her and taking close-up footage of her nipples while masturbating. Another video showed Mr. Schroth masturbating to ejaculation on a girl's buttocks, and another showed him bathing with two minor females, rubbing soap on their bodies, and telling them that they could wash his penis. (These will not be summarized in the current evaluation. The reader is referred to the pre-sentence investigation report for a summary of this information.)

At the time of his arrest, Mr. Schroth's computer was confiscated. No child pornography was found on his computer.

When questioned, Mr. Schroth noted that he had been sexually attracted to younger girls as a youth and that this attraction had continued throughout high school and into his adult life. He claimed that he only acted upon these thoughts after he returned from service in Iraq. He stated that he had never viewed child pornography prior to his military service in Iraq. He acknowledged that as a youth he had been sexually abused by older female babysitters. He indicated that it was only after his service in Iraq, and experiencing traumatic events there, that he began acting on his sexual urges and rationalizing this behavior to himself.

Mr. Schroth stated that he never received any psychological treatment prior to 2006, when he received treatment to help him deal with his divorce. In January 2011, he sought treatment in a sex offender treatment program. Since he has been in custody, he has been treated with the anti-depressant medication, Celexa.

**Evaluation Procedure**

I met with Mr. Schroth at the California City Correctional Center in California City, California on 6-12-13. At that time, I informed him of the purpose and confidential nature of the examination. He understood this and agreed to cooperate. He indicated that he was receiving medication in the form of Celexa 30mg daily for depression and Atarax for anxiety.

The evaluation consisted of a detailed clinical interview during which biographical information was obtained and a psychological history taken. A modified mental status examination was administered, as was formal psychological testing in the form of the Minnesota Multiphasic Personality Inventory-2 and the Milan Clinical Multi-Axel Inventory-III. A sexual history was also gathered.

Psychological Evaluation  Kania 3
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

**Background Information**

The information in this section was provided by Mr. Schroth. He is considered to be a reliable historian, inasmuch as the information he provides is internally consistent and consistent with information found in the pre-sentence report.

Mr. Schroth indicates that he was born in Longmont, Colorado and lived there until the age of seven, when his family moved to Palmdale, California. The family returned to Colorado when he was fifteen. His father, David Schroth, is currently 80 years old and lives in Colorado. He is a former air traffic controller who is described as a very frugal man, a womanizer, and an alcoholic. Mr. Schroth also reports that this father was a violent man who would beat his mother, although he was never physically abusive towards Mr. Schroth.
His parents separated when he was six or seven years old, due to the father's "womanizing." (Mr. Schroth describes his father as a "sex addict.") Following the separation, Mr. Schroth and his brother lived with their mother and visited their father during the summer. Their father subsequently remarried and the stepmother treated Mr. Schroth "like an outsider," favoring her own son. She was never physically abusive towards Mr. Schroth.

Mr. Schroth identifies his mother as Alta Johnson. She is sixty-eight years old and lives in Ohio. He describes her as a very loving woman, "my mentor," who "taught us how to treat a woman right." He states that her discipline was never abusive and she did not abuse drugs or alcohol. Following her divorce, she married Gary Johnson, who worked in maintenance control at Edwards Air Force Base. Mr. Schroth reports that his stepfather treated him "pretty good," and as a result he trusted and respected his stepfather.

Mr. Schroth reports that he has a younger brother with whom he gets along very well and a stepbrother with whom he has only occasional contact. He states that his stepbrother suffers from schizophrenic and bipolar disorders.

Mr. Schroth describes his childhood as "pretty decent" and "average." When asked about any traumatic events in his life, he recalls an incident when his father and stepmother were fighting and he called the police. He denies that he was ever physically abused, but he does report that he was sexually abused on two occasions as a youth. He was first sexually molested when he was eight or nine years old, by a 16-year-old neighborhood girl who was babysitting him. She put her hands in his pants and fondled him, then put his hands in her shirt. He states that this occurred regularly over a two-week period of time, until his brother told their mother of this. He was molested again at the age of ten by a twelve-year-old babysitter who apparently took off her shirt, laid on the bed, and told him to "touch her."

Psychological Evaluation
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

Kania 4

Mr. Schroth reports that their were adequate finances in the home while he was growing up. He began living independently at the age of eighteen when he joined the Navy.

Mr. Schroth indicates that he married Debra Glenn when he was nineteen and she was eighteen. They had met in a high school vocational class and he was attracted to her because she was pretty, "fit," had a great smile and a good personality. They dated for six months before he graduated and joined the Navy. He then decided to marry her. When he finished basic training, he returned to Colorado and they married. They were married for fourteen years, then separated because they were better friends than husband and wife and had "grown apart." At the time they separated, he was stationed in Iceland and she was living in Maryland. He acknowledges that "she had a boyfriend." He and his wife had no children.

Mr. Schroth states that at the time of his arrest he had been living alone in an apartment in San Diego for one year. He was doing his "clinical rotations" as part of his Navy training to become a physician's assistant. As such, he was being supported by the Navy. He had been in the Navy for twenty-two years and was a Lieutenant Junior Grade. He had become a commissioned officer in October 2011.

Mr. Schroth states that he has never received Social Security Disability, Workers Compensation or unemployment.

**Educational History**

Mr. Schroth states that he attended elementary and middle school in Palmdale, California, receiving good grades in the GATE program. He denies any behavior problems. He had friends and was involved in Little League. He denies any symptoms suggestive of serious childhood psychopathology. He and his mother then moved to Colorado and he completed high school there. He reports good grades with no behavior problems. He had friends and one girlfriend, who later became his wife. He worked part-time at a grocery store and in a fast-food restaurant. He graduated in 1991.

As noted, Mr. Schroth joined the Navy following high school and while in the military received training, first to become a hospital corpsman and later to become a lab technician. During this time, he took college courses in math and English, to complete his general education requirements. He received an A.A. degree while in Japan in 1995. He then received a B.A. degree in liberal arts while stationed in Iceland in 2002. During this time, he had applied repeatedly (five times over a six-year period) to be accepted into the physician's assistant program. He subsequently completed a B.S. degree while in the P.A. program in San Antonio, then began his clinical rotation at the naval hospital in San Diego. As a result of that training, he received a Master's degree as a physician's assistant. He

Psychological Evaluation
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

Kania 5

states that he excelled in the program and graduated second in his class (which was composed of members from all military branches).

### Military Service

Mr. Schroth joined the Navy when he was eighteen and went through boot camp in San Diego, where he also received corpsman training and training as a laboratory technician. He then spent two years at the naval hospital in Oakland and two years at a clinic in Japan. He served as a lab technician in Maryland for two years before being transferred to Iceland, where he worked in a lab for two years. He returned to Maryland and was on the "blood donor team," then was sent to Iraq, where he served for nine months in a prison/hospital, providing medical services to Iraqi prisoners and civilians. He then returned to Maryland for one year before entering the P.A. program in San Antonio.

Mr. Schroth states that he never received any disciplinary action while in the military, although he was investigated for his contact with the fifteen-year-old daughter of a co-worker. He and this girl had apparently exchanged flirtatious text messages. No charges were filed. He reports that he received a number of commendations throughout his military service, e.g., achievement medals, commendation medals for his service in Iraq, and good conduct medals every four years.

### Vocational History

As noted, Mr. Schroth worked part-time while in high school. Since then, he has served in the Navy.

### Prior Arrests

Mr. Schroth denies any arrests as a juvenile. He states that his only arrest is his arrest in the present case.

Mr. Schroth states that he has pled guilty to sexual exploitation of minors and aggravated sexual exploitation (involving crossing state lines). He reports that these charges involve a total of four victims. He is aware that these are very serious charges and that he could receive a mandatory minimum sentence of thirty years in federal prison. He states that there a recommendation has been made for thirty-five years and the prosecutor is seeking seventy years.

### Substance Use

Psychological Evaluation
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

Kania 6

    Mr. Schroth states that he smoked cigarettes for one week as a teenager. He denies the use of all illicit drugs. He began using alcohol while in middle school when he would "sneak sips" while visiting his father. He began drinking beer and wine coolers when he was twenty-one. He began drinking more heavily when he was thirty-two or thirty-three, following his divorce. He would drink two or three cocktails, two or three times a week, in addition to wine. He also drank more heavily following his service in Iraq, drinking to such a level that in the one or two years prior to his arrest he would often black out in the evenings. (He was in the P.A. program at the time.) He recognized that his drinking was excessive, but notes that it did not have an affect on his work.

    Mr. Schroth states that he never sought treatment for his alcohol abuse, as he feared this would affect his career. He states that he did not realize that he could have sought such treatment privately.

    As noted, Mr. Schroth reports a significant family history of substance use. He states that both his father and stepmother were alcoholics and that his father never received treatment.

**Health Record**

    Mr. Schroth states that he is in good health at the present time. He experienced only the normal childhood illnesses and he has never been hospitalized or undergone surgery. He has never suffered a head injury that left him unconscious. He has been told that he suffered a seizure when he was eighteen months old. He reports a history of migraine headaches which began as a teenager and continued until March 2012.

    Mr. Schroth reports that sensory organs are intact at the present time, although he reports some hearing loss. His motor control is good and his gait is normal. He is able to sit throughout the evaluation with no unusual tics or movements. His speech is clear and relevant. Consciousness is clear.

**Psychological Treatment History**

    Mr. Schroth states that he was never referred for, and never received, psychological treatment as a child. He first sought psychological treatment following his divorce when he was thirty-two years old. At that time, he received "Phase of Life" counseling for a one-year period and he felt this treatment was helpful. In January 2012, following his arrest, he sought treatment in a sex addiction program with Larry Corrigan, Ph.D. He states that this program was recommended to him by his attorney. He was involved in this treatment for over two months and he believes that this therapy was helpful, albeit brief. However, he explains that because he was taken into custody, he was not able to become involved in the two-year intensive treatment program that Dr. Corrigan provided.

Psychological Evaluation                                                                        Kania 7
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

   Mr. Schroth states that he was first prescribed Celexa, an anti-depressant, approximately eight months ago and that he has taken that medication ever since.

   Mr. Schroth reports thoughts of suicide (overdosing on Tylenol) in December 2011, after a warrant was issued for his arrest. He states that even though a warrant had been issued, he continued to be involved in the P.A. training program and he believes that because he had to give a talk to the new trainees, his plan to commit suicide was delayed. Ultimately he discussed this with his family and decided he would not put his family "through that (suicide)."

   Mr. Schroth reports no family history (per se) of severe psychological disorders. However, his description of his father suggests otherwise. He does indicate that a maternal aunt suffered from depression and suicide attempts later in her life.

**Evaluation Appearance and Behavior**

   Brandon William Schroth presents as a 40-year-old (DOB 6-6-73), divorced, Caucasian man, 5'5" in height, weighing 135 pounds. He has short, thinning, brown hair and blue eyes. There are no obvious scars, but he reports a tattoo of a female devil on his right upper arm. He is neatly dressed in the orange and white-striped uniform issued by the prison. He is polite, cooperative, alert and oriented throughout the evaluation.

   Mr. Schroth's thought processes, as reflected in his speech, are noted to be logical and organized. He denies ever experiencing psychotic symptoms such as hallucinations or delusions and there is no evidence of such during the evaluation. He is able to accurately perceive events occurring around him without distortion due to any underlying psychological disorder. When asked to identify his talents, Mr. Schroth states that he is a compassionate person who is "good at helping people (medically)" and communicating with people "on their level."

   Mr. Schroth's emotional reaction to the content of the interview is appropriate. He describes his mood as "upbeat, then depressed." He notes, for example, that he has been in administrative segregation (because there is no PC housing) since January 2013. As a result, there is little to do. He has difficulty sleeping, but medication helps. He continues to suffer from nightmares of his service in Iraq.

   Mr. Schroth seems to indicate that he has never suffered from any severe depressive episodes. He does acknowledges current symptoms that are suggestive of depression, in spite of the fact that he is receiving an anti-depressant. He denies any history of manic episodes or racing thoughts. He reports symptoms suggestive of mild situational anxiety. There are ongoing symptoms of a post-traumatic stress disorder, the primary symptom of which are nightmares. He states that these nightmares are of the

Psychological Evaluation
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

Kania 8

period of time he served in Iraq at an adult detention center. He states that during this time civilians would frequently bring their children for treatment and that four or five times during the nine months he was in Iraq, this was treatment for severe burns the children had suffered. Following his return from Iraq, he experienced nightmares involving these burned children four to seven times per week. After the first year back, the nightmares decreased to once or twice a month. He attributes the decrease to his use of alcohol and his focus on work and school. He states that since January 2013 he has been experiencing the nightmares two or three times a week.

In addition to the nightmares, Mr. Schroth reports that he isolates himself and does not socialize with others. He states that he is startled by loud noises, associating these noises with explosions he experienced in Iraq. He has also had flashbacks and would suddenly feel that he was back in Iraq. As noted, he also began using alcohol heavily upon his return from Iraq. Mr. Schroth denies any history of panic attacks or compulsive or obsessive behaviors.

Mr. Schroth describes himself as a compassionate, gentle, kind, thoughtful, level-headed, fair man. When asked to explain the apparent contradiction between such a self-description and the charges he has pled guilty to, Mr. Schroth states that following his return from Iraq he began acting upon the sexual feelings that he had experienced throughout his life. He rationalized his behavior by telling himself that children should be able to experience anything they want (as he had seen young children killed in Iraq). He began to feel that "everyone should have the opportunity to experience all that life has to offer–kids deserve everything in life–they're just kids–they have their whole life ahead of them–they deserve to experience it." (He now acknowledges that this thinking was a rationalization for his sexual behavior with these children and he believes that it was the result of having "lost my faith" after his experiences in Iraq.)

Mr. Schroth's cognitive functioning is intact. His attention, concentration and comprehension are good. He appears to be of average to above-average intellectual ability. His memory for distant and recent events is intact. Social judgment is at least superficially intact at the present time. Insight is somewhat limited.

**Psychological Assessment Procedures**

The results of the MMPI-2/MCMI-III are used for the purpose of providing an extended set of hypotheses for clinical exploration and, in some cases, to rule in or rule out other hypotheses. The examiner recognizes that the results of these procedures are basically actuarial and probabilistic in nature, and that personality characteristics and symptoms found in the MMPI-2/MCMI-III interpretations have been identified as disproportionately frequent among individuals obtaining similar scores and patterns of scores on the MMPI-2/MCMI-III.

Psychological Evaluation  Kania 9
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

    The results of the psychological assessment procedures reflect that Mr. Schroth is severely anxious, tense and fearful. He is likely to experience both psychological and physical symptoms as a result of this anxiety. He is also likely to experience compulsive behaviors and obsessive thinking. He would strive to be meticulous, responsible and perfectionistic in an attempt to control the anxiety he experiences. Moreover, there is indication of chronic underlying depressive feelings.

    Mr. Schroth is likely to attempt to deal with his emotions by hiding them from himself and others. He is likely to deny unpleasant events in his life and to act as though emotions are not significant to him. Yet, underlying this, there is a need to control his resentment and unreleased anger. It is quite likely that there is intense resentment directed towards his family, which he has difficulty acknowledging and confronting. In his attempt to control these feelings, he presents as a respectful, conscientious and disciplined person, often deferring to the authority of others. While he has difficulty acknowledging his own feelings, he may see himself as an individual who is sensitive to the feelings of others, but only if their feelings correspond to his own feelings. At the same time, he is likely to be insensitive to the feelings of others if they are different from his own.

    The difficulty Mr. Schroth has in dealing with his own emotions also makes it difficult for him to establish close relationships with loved ones. It is likely that he has a distrust of both himself and others, that he is emotionally immature, that he has a negative self-image, and that he is unassertive. This results in the building up of emotional walls, so that he is not hurt. At the same time, he is left in a situation lacking any emotional closeness to others. In this regard, Mr. Schroth's need for sexual gratification would conflict with his insecurities regarding emotional closeness. (This may be related to a feeling of betrayal by his wife when she sought a divorce, but may also be associated with his own sexual molestation as a child.)

    There is also evidence that Mr. Schroth is suffering from the symptoms of a post-traumatic stress disorder, characterized by distressing recollections of events and flashbacks of life threatening incidents. There is indication that Mr. Schroth has used alcohol (both episodically and over longer periods of time) to help him deal with anxiety, feelings of low self-esteem, symptoms of a post-traumatic stress disorder, and his underlying resentments and depression.

    Diagnostically, in addition to pedophilia, Mr. Schroth is suffering from a post-traumatic stress disorder, a generalized anxiety disorder, and alcohol abuse/dependence (currently in institutionalized remission). There is also evidence of a personality disorder NOS, with obsessive/compulsive, dependent, and passive-aggressive features and a GAF of moderate to severe impairment (48-55).

**Sexual History**

Psychological Evaluation                                                                             Kania 10
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

     Mr. Schroth indicates that there was never any talk of a sexual nature in the home while he was growing up. If he had questions in this regard, he was most likely to get answers from friends at school or in sex education classes. He recalls that when he was fourteen or fifteen, his stepfather made comments about using condoms.

     Mr. Schroth recalls seeing a Playboy magazine when he was nine years old at a friend's house. He also recalls that his mother later caught him with this magazine and told him that it was inappropriate. Between the ages of twelve and fourteen, he spent summers with his father and summer and they had "a big collection" of pornography which he would "sneak" out with (videos). These videos were of adult men and woman, and women with women, engaged in fellatio, cunnilingus, masturbation and penetration. He denies that there was any child pornography or sado-masochistic sexual behavior. He recalls that he would view this material once or twice per week, usually while masturbating. He also recalls that when he was fifteen or sixteen, he would view the Playboy channel on cable television.

     As indicated, Mr. Schroth reports being sexually molested at the age of eight or nine by a sixteen-year-old female babysitter, who put her hands in his pants and fondled him and had him put his hands under her shirt. He states that this occurred over a two-week period. He reports that he was sexually molested again at the age of ten by a twelve-year-old babysitter, who took off her shirt and laid on the bed in her underwear and directed Mr. Schroth to touch her. Mr. Schroth indicates that these two experiences made him sexually aware.

     Mr. Schroth recalls that when he was eleven or twelve he had a crush on a girl who was the daughter of his parents' friends. When he was twelve or thirteen, he was attracted to another girl and they would talk on the phone and hold hands. He states that his next girlfriend was his wife-to-be, whom he met when he was seventeen and she was sixteen. They knew each other for six months prior to the time he entered the Navy and his first heterosexual experience was with her (it was "her idea" as she was sexually experienced). He states that this took place in his bedroom and he recalls that it was "awkward." They subsequently engaged in intercourse approximately twice a week, if possible, usually at her home after he would sneak into her bedroom at night. This went on for six months before he joined the military. He then spent eight weeks in boot camp and during that time he and his girlfriend became engaged. When he returned following boot camp, they were married.

     Mr. Schroth reports that following his marriage, he and his wife engaged in intercourse on a daily basis and initially had no arguments or disagreements over their sexual activity. He states that they attempted to have children, and talked about in vitro fertilization, but never did so. He states that he was faithful to his wife throughout their marriage, but after seven years of marriage, his wife had an affair with a neighbor. He suspected that she had been unfaithful and he confronted her. They then "rebuilt" their

Psychological Evaluation
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

Kania 11

relationship. He believes that his wife later met another man, which ultimately led to her seeking a divorce from him.

Mr. Schroth states that during his marriage, he and his wife would view Playboy magazines or his wife would read stories in Hustler magazine. Once or twice a month, they would watch adult pornography together. He also indicates that at times his wife would become upset with him, given that he was attracted to young adolescent girls. He explains that he had been attracted to young girls (middle-school age) since he was in high school and would fantasize about them while masturbating. During his marriage, he would occasionally masturbate while thinking of young girls he had seen. His fantasies usually involved seeing these girls topless and touching their breasts. Later in his life, he would fantasize about ejaculating onto their chests (which he had seen in the adult pornography he watched with his wife). He would at times ejaculate on his wife's chest. He states that prior to the divorce, there were times when he would view on-line pornography of pictures of teen-aged girls.

Mr. Schroth indicates that during the time he was stationed in Iceland (following his divorce) he became involved in chat rooms on-line. (He states that he and his wife had been involved in such activity prior to their divorce, and that his wife would "chat" with men on the internet and might view men masturbating.) He states that once or twice a week he would view posed nude teenage girls, but he claims that these pictures were not "x-rated." His viewing of this pornography increased following the divorce.

Mr. Schroth reports that his interest in pornography and these various websites increased again after returning from his service in Iraq. During that time, he began viewing child pornography and would often download this material. He would view this material on a daily basis and preferred pornography involving adolescent girls. Through his contacts in various on-line chat rooms, he downloaded programs that allowed him to obtain this pornographic material. He did this over a two-year period of time while he was in Maryland, later while in San Antonio, and still later while in San Diego. At times, he would also view adult women performing sexual acts on webcams.

Mr. Schroth believes that his divorce "took the brakes off" of his sexual behavior and that he then began viewing on-line pornography to a much greater degree. He states that his behavior was "derailed" and accelerated following his experiences in Iraq. He reports that he had always been able to control his attraction towards young teenaged girls, but it became increasingly difficult. He believes that his lack of control was exacerbated by his increased use of alcohol, which he used to deal with the "emptiness" in his house. He feels that the alcohol served to remove his inhibitions.

Mr. Schroth states that he had contact with one adult woman through a chat room, and eventually met her in a motel room in Ohio, where they engaged in sexual intercourse.

Psychological Evaluation    Kania 12
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

They would visit each other occasionally over a six-month period. Yet, he became increasingly involved in chat room contacts who were exchanging and showing child pornography.

    Mr. Schroth also reports having contact with friends he had met while in Germany. He visited these friends two or three times in Sacramento (while he was living in San Antonio) and once in Germany. He acknowledges that during this time he began "grooming" one of the friends' daughters by masturbating in front of her and ejaculating on her chest twice. He states that when she was asleep, he would lift her clothing and "peek." He also recalls taking videos of her. He acknowledges having contact with these two girls in Germany and acknowledges that he bathed with them, with the knowledge of their parents. He also took a video of masturbating with these girls while in the bathtub. He reports that this occurred a number of times.

    Mr. Schroth reports that he then met another man who lived in Kansas City. That man talked about "doing things" with his eight-year-old daughter and eventually this man and his daughter flew to San Diego. Mr. Schroth knew that this man wanted to view him (Mr. Schroth) molesting the eight-year-old daughter. His behavior involved ejaculating on the young girl's chest while the father watched. He notes that over an extended period of time, this man visited on a few occasions and that he visited this man and his family in Kansas City.

    Mr. Schroth also reports involvement (as found in the probation officer's report) with victims in Pennsylvania and Colorado. In this regard, his recollection of events is consistent with information found in that probation report.

    Mr. Schroth indicates that in the six months prior to the warrant, he had destroyed the pornography he had on his computer and was attempting to avoid child pornography. He states that he was no longer visiting chat rooms, or at least to a lesser degree. He was also not receiving any pornography sent to him. He states that this was motivated by the fact that the man with whom he had contact in Colorado had been arrested.

    Mr. Schroth denies any history of homosexual behavior. He has never visited prostitutes. He has never contracted a sexually-transmitted disease. He denies any sado-masochistic behavior. He denies exhibitionistic behavior. He acknowledges some voyeuristic behavior, noting that when he was married, he would peek into the bedroom where his wife's younger sister slept and watch her undress. He would later masturbate to recollections of this.

    As noted, Mr. Schroth indicates that following his divorce and the time spent in Iraq, he "gave up on prayer" and "lost my boundary." He rationalized his behavior by reasoning that "everyone deserved to experience everything in life that they wanted." With the first

Psychological Evaluation	Kania 13
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

two victims, he rationalized that if they were willing to try this behavior, then they should be allowed to do so. He believed that he was not doing anything that they were not already familiar with, and over time his fear of engaging in this type of behavior decreased, as he visited chat rooms and viewed materials posted on-line, and this behavior became more common in his life. He states that because he was not apprehended, he continued with this behavior. He acknowledges that "in the back of my mind" he was aware that this behavior was "not right," and although he felt at times that he "needed to stop," he could not. He explains that "things just snowballed" and he became increasingly immersed in this behavior.

Mr. Schroth maintains that when he reflects upon his behavior, he is now "disgusted" by it. He states that he is ashamed of what he did to these children and to their families. He reports that he has tried to regain his faith and he believes that his prayers were answered in the form of his arrest and that "this demon has now been removed." He acknowledges that he deserves punishment, and states that he is willing to do whatever it takes to atone for his actions (e.g., assisting law enforcement or being a member of research programs). He hopes to become involved in treatment while incarcerated, and to engage in any other activities that might give his life meaning.

**Integration**

Brandon William Schroth presents as a 40-year-old man who appears to have had a successful career in the military. Although he reports no history of severe psychological disorders during his childhood and most of his adult life, it is quite apparent that he has suffered from pedophilia from since early adulthood.

Mr. Schroth reports that he was sexually molested himself as a boy, and quite likely as a result, he found himself (during high school) becoming sexually attracted to young adolescent girls (girls about the same age as those who had molested him). He was able to keep himself from acting upon this sexual attraction, but it became a problem (to some degree) in his marriage, as his wife was aware that he often watched girls this age. He acknowledges that he would often fantasize about these girls and masturbate to these fantasies.

Mr. Schroth always believed that he would be able to control these feelings and not act upon them. Yet, this changed following his divorce when he became more involved with on-line pornography and also began drinking more heavily. His problems worsened following his stay in Iraq and it appears that he began to experience symptoms of a post-traumatic stress disorder. His drinking increased, as did his interest in pornography.

As he became increasingly involved in chat rooms and exchanging pornographic material, Mr. Schroth became desensitized to what he was doing and eventually began

Psychological Evaluation                                                                                      Kania 14
Brandon William Schroth
Case No.: 09743; 12CR00977-001-WQH
July 12, 2013

acting upon this through individuals who sent him child pornography involving their own children. He acknowledges that he engaged in this behavior over an extended period of time, and that at times he would travel around the country and to Germany in order to do so. He states that he recognized that his behavior was wrong, and he attempted to stop, but could not.

The emotional isolation that Mr. Schroth felt following his divorce was exacerbated by the post-traumatic stress disorder that he suffered from as a result of his service in Iraq. He was depressed and he began using alcohol more heavily as a way of dealing with his emotions. At the same time, his alcohol use served to disinhibit him and as he indicates, the "brakes were taken off" and he began acting upon the sexual fantasies he had previously been able to control.

Mr. Schroth expresses his remorse for his actions. It is his desire to engage in therapy to help him better understand and control his behavior. He also hopes that he will be able in some way (either by participating in research or by aiding law enforcement) to "atone" for his actions.

Should you have any questions regarding my evaluation of Mr. Schroth, or the opinions I have formed in this matter, please feel free to contact me.

Sincerely,

*Michael E. Kania, PhD*

Michael E. Kania, Ph.D.
Clinical Psychologist
License No.: PSY6583

# CURRICULUM VITAE
# MICHAEL E. KANIA, PH.D.

**Address:** Michael E. Kania, Ph.D.  
20 Nevada Street  
Suite 202  
Redlands, CA 92373

**Phone:** 909-748-0103  
**Fax:** 909-798-2926

**Licensure Status:** Licensed Psychologist  
State of California - PSY 6583

**Educational Background:**

- 1979: Ph.D., Clinical Psychology  
  University of Utah, Salt Lake City, Utah  
  Program accredited by the American Psychological Association

- 1976: M.S., Psychology (specialty in clinical psychology)  
  University of Utah, Salt Lake City, Utah

- 1972: B.A. (with honors), Psychology  
  California State University Fullerton, Fullerton, California

- 1969: A.A., Mt. San Antonio College  
  Walnut, California

**Honors:**

Phi Kappa Phi, California State University, Fullerton (1971-72)  
Pre-doctoral traineeship, National Institute of Mental Health, 1974-1976  
Teaching Assistant, University of Utah, 1977-78  
National Institute of Mental Health traineeship, Patton State Hospital, San Bernardino, California, 1976-77.

**Association Membership:**

Member, American Psychological Association  
    Division 29 (Psychotherapy), Division 41 (Law and Psychology)  
Member, National Register of Health Care Providers in Psychology  
Member, American College of Forensic Psychologists

Michael E. Kania, Ph.D.  2
Curriculum Vitae

**Professional Experience:**

1980-present:   Private practice (Clinical and Forensic Psychology)

Member of Medical Commissions of Riverside, San Bernardino and Los Angeles counties, completing clinical and psychological evaluations and/or court testimony in 2000+ cases in the following areas of expertise:

- Child custody and guardianship (730EC evaluations)
- Trial competency (1368PC evaluations)
- Sanity (1026PC evaluations)
- Dangerousness of incarcerated defendants (2962PC evaluations)
- Narcotics addiction (3050/3051WIC evaluations)
- Evaluations (SSA, Office of Disability Adjudication and Review)
- Minor ward of court (370WIC evaluations)
- Juvenile dependency/delinquency (602WIC evaluations)
- Sexual molestation (288.1PC and 1203.066PC evaluations)
- Conservatorship evaluations (of person and estate)
- Personal injury
- Consultation and/or evaluations in 20+ death penalty cases

Consultation, evaluation and opinion in the area of alleged employment-related emotional distress.

Consultation, evaluation and testimony in the areas of the behavioral affects of alcohol, PCP, methamphetamine and related drugs.

Evaluations and determination of the validity of accusations of child molestation, as well as the suggestibility of children in such evaluations.

Medical advisor for Social Security Administration: Serving as consultant to Administrative Law Judge regarding issues of disability and disability benefits.

Individual, group and marital therapy with children, adolescents and adults.

Consultant to the City of Los Angeles, Personnel Department, Medical Services Office: Evaluation of applicants for position of police officer and admission to the Los Angeles City Police Academy.

Michael E. Kania, Ph.D.  3
Curriculum Vitae

1979-1987: Staff Psychologist
Patton State Hospital, Patton, California

Psychological services to patients committed by the court after being determined to be not trial competent, guilty but not guilty by reason of insanity, or mentally disordered sex offenders.

Duties included:
- Providing individual and group therapy
- Completion of psychological assessment
- Consultation with treatment staff
- Supervision of clinical psychology pre-doctoral interns
- Teaching general seminar in psychology as part of the APA-accredited pre-doctoral internship program
- Bi-annual evaluations of patients, with reports written to the court, and court testimony when necessary.

Hospital-wide responsibilities:
- Chair, Psychology Staff Group
- Member, Psychology Credentials Committee
- Member of Hospital committees dealing with JCAH accreditation, including establishment of quality assurance and writing of by-laws for integrated medical staff, including credentialing and privileging.

State-wide responsibilities:
1985-1987: Member, State Recruitment Task Force (psychology) for recruitment of psychologists for five state hospitals.

1981-1987: Clinical Associate Professor
Fuller Graduate School of Psychology
Pasadena, California

1983-1984: Consultant, California Department of Justice

1977-1979: Clinical Psychology Intern
Salt Lake Community Mental Health Center
Salt Lake City, Utah

Michael E. Kania, Ph.D.  4
Curriculum Vitae

        Duties included: Intake evaluations, psychological assessment, crisis intervention, individual/marital psychotherapy, staff training.

1976-1977:   Clinical Psychology Intern
               Patton State Hospital
               Patton, California

               Duties included: Long-term individual and group psychotherapy, psychological evaluations and assessment, admission evaluations and consultation, behavioral observation and assessment, intellectual assessment, behavior treatment planning and consultation with developmentally disabled residents.

1973-1974:   Hospital Improvement Program
               Lanterman State Hospital
               Pomona, California

               Duties included: Development and implementation of hospital improvement program for severely and profoundly disabled child residents.

**Specialized Training:**

    Seminars and courses completed:

        MMPI-2 (with Alex Caldwell, Ph.D.)
        Rorschach Technique (with John Exner, Ph.D.)
        Evaluation of allegations of sexual abuse
        Suggestibility of children's statements
        False memory syndrome
        Multiple personality disorder
        Substance abuse